# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

RUSSELL A. FOLKERS,

      Plaintiff,

vs.

CITY OF WATERLOO, IOWA,
DARREL JOHNSON, in his individual
capacity and as Animal Control Officer
for City of Waterloo, Iowa, and
MARIA TILLER, in her individual
capacity and as Animal Control Officer
for the City of Waterloo, Iowa,

      Defendants.

No. C07-2066

RULING ON MOTIONS FOR
SUMMARY JUDGMENT

————————

## TABLE OF CONTENTS

I.    *INTRODUCTION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   *PROCEDURAL HISTORY*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  *ISSUES PRESENTED*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  *RELEVANT FACTS*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.   *LEGAL STANDARD FOR SUMMARY JUDGMENT*. . . . . . . . . . . . . . . . 8

VI.  *DISCUSSION*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     A.    *Plaintiff's Motion for Partial Summary Judgment*. . . . . . . . . . . . . . 9
         1.    *Was the Conduct Complained of Committed by Persons
               Acting Under Color of State Law?*. . . . . . . . . . . . . . . . . . . 10
         2.    *Did the Conduct Deprive Folkers of a Constitutional
               Right?*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            a.    *Fourth Amendment*. . . . . . . . . . . . . . . . . . . . . . . 10
            b.    *Fifth Amendment*. . . . . . . . . . . . . . . . . . . . . . . . 12
            c.    *Fourteenth Amendment*. . . . . . . . . . . . . . . . . . . . 13

        *(1)*   *Procedural Due Process*. . . . . . . . . . . . . . . . 13

        *(2)*   *Substantive Due Process*. . . . . . . . . . . . . . . . 16

    *d.*    *Summary*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*B.*   *Defendants' Motion for Summary Judgment*. . . . . . . . . . . . . . . . 21

*VII.*  *ORDER*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## *I. INTRODUCTION*

This matter comes before the Court on the Motion for Partial Summary Judgment (docket number 48) filed by the Plaintiff on June 2, 2008, and the Motion for Summary Judgment (docket number 52) filed by the Defendants on August 12, 2008. Defendants' request for oral argument is hereby denied. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## *II. PROCEDURAL HISTORY*

On September 25, 2007, Plaintiff Russell A. Folkers filed a Complaint (docket number 2) seeking injunctive relief and compensatory damages. Plaintiff alleges a taking of his property without due process of law, in violation of his rights under the Fifth and Fourteenth Amendments. On October 6, 2007, Defendants City of Waterloo, Iowa, Darrel Johnson, and Maria Tiller, filed their Answer (docket number 13) denying the material allegations and asserting certain affirmative defenses.

The request for temporary restraining order was referred by District Judge Edward J. McManus to the undersigned Magistrate Judge for a report and recommendation. Pursuant to this Court's recommendation, Judge McManus enjoined the Waterloo City Council from proceeding until the Court had an opportunity to consider Plaintiff's request for a preliminary injunction. The matter was then referred to the undersigned Magistrate Judge for a report and recommendation in that regard.

Following a hearing, this Court recommended that Plaintiff's request for a preliminary injunction be denied and the temporary restraining order be set aside. The Court also recommended, however, that the City Council be enjoined from relying on the

third alternative definition of "dangerous dog," as set forth in Ordinance No. 5-1B-1(C). This Court's recommendations were adopted by Judge McManus on November 14, 2007.

On January 22, 2008, the Court established a Scheduling Order and Discovery Plan. Pursuant to the agreement of the parties, this case was referred to the undersigned Magistrate Judge for all further proceedings. Trial is scheduled on January 5, 2009.

### III. ISSUES PRESENTED

In his motion for partial summary judgment, Plaintiff requests that the Court determine, as a matter of law, that he "suffered a deprivation of his property interest in his dog Cleo without due process of law." Plaintiff argues that the only issues remaining for the jury are "whether such depravation [sic] was a proximate cause of any damages to Folkers and if so the extent of such damages." In their motion for summary judgment, Defendants argue that there was no violation of constitutional due process and, in any event, the individual Defendants enjoy qualified immunity.

### IV. RELEVANT FACTS

Plaintiff Russell A. Folkers ("Folkers") is an over-the-road truck driver who lives part of the time in Waterloo, Iowa, and part of the time in Edinburg, Texas. This case arises from the temporary taking of Folkers' dog, Cleo, by Waterloo animal control officers on August 28, 2007. Cleo was returned to Folkers' possession on December 7, precisely 100 days later.

The facts surrounding Cleo's seizure were described by the Court in its Report and Recommendation on the preliminary injunction, as follows:

> Plaintiff Russell Folkers, who resides in the City of Waterloo, is the owner of a five-year-old mixed-breed dog named "Cleo." According to Folkers, Cleo is half Pitbull and half American Bulldog. On Sunday, August 26, 2007, Cleo and another dog ("Lexus") were running loose on Folkers' property. Folkers testified that Lexus is a full-bred American Bulldog which belongs to his son, but stays with Folkers when his son is in town.

3

Rosemary Parr and her family have lived across the street from Folkers' property since mid-June 2007. Parr owns a Bichon Frise by the name of "Sassy." During the late afternoon on August 26, Parr's daughter put Sassy on a leash and took her outside for a walk. Within seconds, however, Parr's daughter returned to the house and reported that Sassy was being attacked. When Parr went outside, she saw that two dogs had Sassy pinned to the ground. Parr yelled at the other dogs and tried to hit them with a dishrag, but was unable to deter them. Parr went back inside to get her husband, and by the time she returned the dogs had carried Sassy across the street. As a result of the attack, Sassy suffered serious injuries and was hospitalized at a veterinarian's office for five days. It is undisputed that the two dogs involved in the attack were Cleo and Lexus.

Rosemary Parr reported the incident to animal control authorities and it was investigated by Defendant Darrel Johnson ("Johnson"), a part-time Black Hawk Animal Control Officer. Johnson testified that he responded to the scene, discussed the incident with Mr. Parr, and then went across the street to discuss the matter with Folkers. No one responded to the door, however, and Johnson did not hear any dogs, so he left a "door hanger" on the Folkers residence, requesting that he be contacted. Johnson then waited at the end of the street to see if anyone came to the Folkers residence. No one appeared, however, and Johnson then left. That evening, Johnson called Defendant Maria Tiller ("Tiller"), a full-time Black Hawk Animal Control Officer. According to Tiller, she and Johnson discussed the matter briefly, but did not talk about seizing the dogs at that time.

On the following morning (Monday, August 27), Folkers called the animal control office, apparently in response to the notice left on his door, but Johnson was not in. When Johnson returned to the office, he called Folkers back. Johnson testified that he advised Folkers during the phone call that he would be issued a citation for dogs running at large and Folkers repeatedly asked him what their intentions were regarding Cleo. Johnson advised Folkers that they would discuss it when he delivered the citations, which the parties

agreed would be the following day. During the phone call, Plaintiff told Johnson that Lexus was with his son, and was no longer at the residence.

Officer Tiller testified that after Johnson's telephone conversation with Folkers, she made a decision to seize Cleo. According to Tiller, the factors which she considered in making that determination included the serious injuries suffered by Sassy in the attack, the history of Animal Control responding to Folkers' property, reports that Folkers would intimidate his neighbors when complaints were made, the fact that Lexus was gone, and the fact that Folkers is a truck driver, thereby allegedly making it easier for him to remove the dog from the City's jurisdiction.

Tiller testified that prior to deciding to seize Cleo, she contacted the veterinarian where Sassy was being treated and was advised that the injuries were life-threatening. She also reviewed the prior reports regarding calls to the Folkers residence. The reports (Plaintiff's Exhibit 4) reflect five calls for dogs running at large, and one complaint of barking dogs, between April 13, 2002, and February 24, 2005. Two of the reports (05/10/2002 and 06/22/2003) refer to threats to neighbors, allegedly made by Folkers in retaliation for their complaints.

On Tuesday, August 28, Officer Johnson went to Folkers' home and delivered four citations (Defendants' Exhibit D). Folkers was cited twice for "dog at large," in violation of § 5-1A-6A of the Waterloo City Ordinances, and two counts of "fear of attack," in violation of Ordinance 5-1A-6B. Johnson advised Folkers that he was seizing Cleo, and Folkers cooperated in loading Cleo into the truck. Johnson acknowledged that Cleo was "friendly" when he was placed in the vehicle.

*See* Report and Recommendation (docket number 21) at 3-6 (footnotes omitted).

On the day following the seizure, Defendants Darrel Johnson ("Johnson") and Maria Tiller ("Tiller") signed an order concluding that Cleo was a "dangerous dog" and must "be removed from the City or be humanely destroyed."

> Animal Control concludes that "Cleo" is a dangerous dog
> pursuant to Waterloo Code.
>
> Animal Control hereby orders pursuant to City Ordinance 5-
> 1B-4F that the order from Animal Control Officer Darrel
> Johnson finding the dog to be a dangerous dog is hereby
> affirmed and orders that "Cleo" be removed from the City or
> be humanely destroyed.

Appendix in Support of Defendants' Resistance, Exhibit 7 (docket number 53-4 at 34-35).

The order was sent to Folkers by certified mail, with a cover letter indicating that Cleo had been determined to be dangerous and ordering Folkers "to remove such dog from the city limits or humanely destroy it." *Id.* at 33. The letter also advised Folkers of his right to appeal to the City Council. Folkers received the letter on August 31, 2007. *Id.* at 37.

Folkers filed a timely appeal and a hearing was scheduled before the City Council on September 24, 2007. The hearing was delayed, however, because Folkers wanted Cleo examined by a veterinarian, who would then render an opinion as to whether Cleo is "a dangerous dog." According to the minutes of the meeting:

> Dave Zellhoefer, Assistant City Attorney, reported that he was
> informed this afternoon by Russ Folkers' attorney that
> Mr. Folkers wants to take Cleo to a veterinary of his choice to
> examine Cleo and have the veterinary appear as a witness and
> render an opinion as to whether Cleo is a dangerous dog.
> Mr. Zellhoefer noted that there seems to be a difference
> between the parties as Mr. Folkers says he requested the
> examination a long time ago and feel they are being denied due
> process. Animal Control says it was preliminarily discussed,
> but nothing materialized, and they did not stop him.

Appendix in Support of Defendants' Resistance, Exhibit 10 (docket number 53-4 at 44).

It was agreed that the hearing would be continued to give Folkers an opportunity to obtain the requested examination. A discussion then followed regarding where Cleo would be detained pending the rescheduled hearing. Mayor Hurley wanted Cleo to remain

in the possession of the City, while the Assistant City Attorney noted that the ordinance permitted his return to Folkers.

> Mayor Hurley stated the Folkers have general due process right to have a veterinary of their choice examine Cleo, but he wants the dog to remain in the custody of Animal Control. Mr. Zellhoefer stated that the Folkers have a safe and secured fence and the ordinance says that is where the dog can stay.

*Id.*

According to the minutes of the meeting, "Mayor Hurley commented that he thinks the ordinance needs to be fixed and will ask legal to fix it." *Id.* Tiller then confirmed that "the ordinance does say if the owner has an enclosed pen, he is entitled to hold the dog during the appeal process." *Id.* Noting that the other dog was "missing," Tiller expressed "fear" that "Cleo will leave the city limits, and if Cleo is out of the city limits, we cannot continue with the process." *Id.* Mr. Zellhoefer noted, however, that it was not necessary for Cleo to be in the city limits in order to proceed. Folkers' attorney then argued that "Mr. Folkers tried to get the dog during the appeal, he has a secured pen in his back yard and should have the dog." *Id.* On a 7-0 vote, the City Council determined that "Cleo remain in the custody of Animal Control and a vet be allowed to do the examination at Animal Control or Animal Control can take the dog to the veterinary." *Id.* The appeal hearing was continued to October 8, 2007. The instant action was filed on the following day.

The appeal hearing before the City Council was not held until December 3, 2007.[1] Folkers' attorney appeared at that time and "asked the council to make a determination as statute permits, and let Mr. Folkers take his dog from Animal Control and take Cleo out

---

[1] Apparently, the hearing was continued from October 8 to December 3 due to the pendency of the request for temporary injunction in the instant action.

of the city."[2] After hearing testimony regarding the events of August 26, 2007, the City Council affirmed the finding by Animal Control that Cleo is a dangerous dog. As part of the discussion, a councilperson asked "if Mr. Folkers does not pay the boarding fees and expenses charged for confinement of Cleo at the Cedar Bend Humane Society will the dog be put to sleep." *Id.* at 48. Mr. Zellhoefer stated that he had been told by Folkers' attorney that "[t]hey want to get Cleo and move him out of the city." *Id.* Mr. Zellhoefer advised the City Council that the claim for boarding fees "could be filed in Small Claims Court." *Id.* Cleo was returned to Folkers' possession a few days after the hearing and is apparently now living on a ranch in Texas.

## V. *LEGAL STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is appropriate if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party.'" *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 821 (8th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson*, 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears the initial responsibility of informing the court of the basis for its motion, and must identify those portions of the record which it contends show a lack of a genuine issue of material fact. *Heisler v. Metropolitan Council*, 339 F.3d 622, 631 (8th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see*

---

[2] Appendix in Support of Defendants' Resistance, Exhibit 11 (docket number 53-4 at 47).

*also Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (same). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see, e.g.*, *Baum v. Helget Gas Products, Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## VI. DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment

In his Complaint, Folkers claims that Cleo's seizure by animal control officers, and the refusal to return Cleo while the appeal was pending, violated his right to "due process of law" as set forth in the Fifth and Fourteenth Amendments to the United States Constitution. Folkers seeks monetary damages pursuant to 42 U.S.C. Section 1983. In determining whether a plaintiff is entitled to recover in a Section 1983 action, the Court must determine whether he was deprived of a federal constitutional right by a person acting under color of state law.[3] Thus, the Court must address two "essential elements:"

> [I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights,

---

[3] Section 1983 itself does not confer any substantive rights, "but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

9

privileges, or immunities secured by the Constitution or laws
of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

### 1. Was the Conduct Complained of Committed by Persons Acting Under Color of State Law?

The first question posed by *Parratt* is easily dispatched. It is undisputed that Animal Control Officers Darrel Johnson and Maria Tiller were acting "under color of state law." When they seized Cleo, Johnson and Tiller were clothed with the authority of the City of Waterloo and acted in their official capacities.

Furthermore, a Section 1983 action may be brought against a municipality. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality may not be held liable, however, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. That is, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* It is also important to note that "municipalities do not enjoy immunity from suit--either absolute or qualified--under § 1983." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993). Accordingly, Folkers has established the first "essential element" of a 1983 action; namely, that the conduct complained of was committed by persons acting under color of state law.

### 2. Did the Conduct Deprive Folkers of a Constitutional Right?

To establish a valid Section 1983 claim, the plaintiff must identify the constitutional provision allegedly infringed. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). Folkers claims that he was deprived of his right to "due process of law" as set forth in the Fifth and Fourteenth Amendments. While the Complaint is not specific, in his brief Folkers argues a violation of both procedural due process and substantive due process.

#### a. Fourth Amendment

Before addressing the constitutional violations claimed by Folkers, it is perhaps useful to address the claims which are *not* pleaded. Specifically, Folkers does not claim

a violation of the Fourth Amendment,[4] which protects people "against unreasonable searches and seizures."[5] "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 68 (1992). A dog is considered property for Fourth Amendment purposes. *Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006). "A seizure of property occurs when there is some meaningful interference with a person's *possessory* interest in that property." *Id.* (emphasis in original) (quoting *Lesher v. Reed*, 13 F.3d 148 (8th Cir. 1994)).[6]

*If* a party claims a violation of the Fourth Amendment, then the Court must determine whether the seizure of the property was "reasonable." Generally, a seizure of personal property is *"per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *United States v. Place*, 462 U.S. 696, 701 (1983). When a seizure occurs without a warrant, as in the instant action, the Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 703.

When a municipality interferes with a person's possessory interest in his dog, the claimant generally argues that the seizure was unreasonable and a violation of the Fourth

---

[4] The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

[5] The Fourth Amendment restraint against unreasonable search and seizure is also applicable to the States. *Mapp v. Ohio*, 367 U.S. 643 (1961).

[6] At least one court has held that the temporary taking of a dog does not constitute a "meaningful interference with an individual's possessory interests in that property" and "does not raise a constitutional violation." *Skinner v. Chapman*, 326 F. Supp. 2d 431, 434 (W.D.N.Y. 2004).

Amendment.[7]   In the instant action, Defendants argue that they had "substantial governmental interests" in seizing Cleo and holding her while the appeal was pending. A determination of whether a seizure is "reasonable" under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Place*, 462 U.S. at 703). It is unnecessary for the Court to conduct that balancing analysis, however, because Folkers does not allege a violation of the Fourth Amendment. *Samuels v. Meriwether*, 94 F.3d 1163, 1168 (8th Cir. 1996) (recognizing the distinction between the Fourth Amendment "reasonableness standard" and the Fourteenth Amendment "notice and hearing requirements.").

### b. Fifth Amendment

Instead, Folkers alleges that Cleo's seizure and continued detention pending the appeal violated his due process rights under the Fifth and Fourteenth Amendments. The Fifth Amendment provides, in part, that no person shall "be deprived of life, liberty, or property, without due process of law." Similarly, the Fourteenth Amendment provides, in part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." While certain provisions in the Fifth Amendment are applicable to the States through the Fourteenth Amendment,[8] the Due Process Clause of the Fifth Amendment applies to the federal government. *Dusenbery v. United States*, 534 U.S. 161,

---

[7] Most of the cases involve the shooting and killing of a dog, which undoubtedly constitutes a "seizure" within the meaning of the Fourth Amendment. *See, e.g., Hatch v. Grosinger*, 2003 WL 1610778 (D. Minn.) at *4.

[8] *See, e.g., Malloy v. Hogan*, 378 U.S. 1, 6 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgement by the States."); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (holding the Double Jeopardy Clause of the Fifth Amendment applicable to the States); *but see, Hurtado v. California*, 110 U.S. 516, 527 (1884) (Grand Jury provisions of the Fifth Amendment are not applicable to the States through the Fourteenth Amendment).

167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the due process clause of the Fourteenth Amendment prohibits the States from depriving any person of property without 'due process of law.'"); *Warren v. Government Nat. Mort. Ass'n.*, 611 F.2d 1229, 1232 (8th Cir. 1980) (the Due Process Clause of the Fifth Amendment applies to the federal government, while the Fourteenth Amendment Due Process Clause applies to the States); *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) ("The Fifth Amendment Due Process Clause, however, applies 'only to actions of the federal government--not to those of state or local governments.'"); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) ("the Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case."). Accordingly, the Court concludes that Folkers' due process claims are properly analyzed under the provisions of the Fourteenth Amendment.[9]

### c. Fourteenth Amendment

In his Complaint, Folkers alleges Defendants' actions violated his Fourteenth Amendment right to due process of law. In his brief, Folkers argues a violation of both procedural due process and substantive due process.

### (1) Procedural Due Process

A procedural due process claim under Section 1983 requires a two-step analysis: first, the Court must determine whether there exists a liberty or a property interest which has been interfered with by one who acted under color of state law; and second, the Court must determine whether the procedures accompanying that deprivation were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). *See also Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000).

---

[9] While the Court has concluded that the Fifth Amendment has no application to this case since there is no allegation of wrongdoing by a federal actor, this conclusion does not have any practical effect on the analysis. The Due Process Clauses of the Fifth and Fourteenth Amendments are "textually identical" and "both proscribe virtually identical governmental conduct." *Carhart v. Gonzalez*, 413 F.3d 791, 795 (8th Cir. 2005) at n.2.

As discussed above, it is undisputed that Defendants were acting under color of state law when they seized Cleo and continued to detain her while an appeal was pending. The Court also concludes that the 100-day detention of Cleo constituted a "meaningful interference" with Folkers' possessory interest in his dog. In *Skinner v. Chapman*, 326 F. Supp. 2d 431 (W.D.N.Y. 2004), the Court concluded that an 11-day detention for purposes of observing the dog for rabies "does not rise to the level of a constitutional deprivation of property." *Id.*, at 433. That detention was brief, however, and for a pre-determined period of time. In this case, Cleo's detention was open-ended and extended for a substantial length of time. "[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in terms of the Fourteenth Amendment." *Fuentes v. Shevin*, 407 U.S. 67, 84-85 (1972).

Accordingly, the Court turns to the second step of the analysis and addresses the question of "whether the procedures accompanying that deprivation were constitutionally sufficient." At the outset, the Court notes that the issue, as in *Parratt*, is one of due process. That is, Folkers does not allege a Fourth Amendment violation. *See Parratt*, 451 U.S. at 536. It is not sufficient that Folkers merely establish a deprivation of his possessory interest in Cleo by persons acting under color of state law, he must also establish that the deprivation was without procedural due process.

> Unquestionably, respondent's claim satisfies three prerequisites of a valid due process claim: the petitioners acted under color of state law; the hobby kit falls within the definition of property; and the alleged loss, even though negligently caused, amounted to a deprivation. Standing alone, however, these three elements do not establish a violation of the Fourteenth Amendment. Nothing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations "without due process of law."

*Id.* at 536-537.

Cleo was seized by Waterloo animal control officers on August 28, 2007, with some prior notice, but without any prior opportunity to be "heard." Hearing on the issue was scheduled before the Waterloo City Council on September 24, 2007, but the hearing was continued at Folkers' request. Cleo was returned to Folkers' possession shortly after a hearing before the City Council on December 3, 2007.

There is no "one size fits all" formula for what process is due in all circumstances. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The Court has rejected, however, "the proposition that 'at a meaningful time and in a meaningful manner' *always* requires the State to provide a hearing prior to the initial deprivation of property." *Parratt*, 451 U.S. at 540. In certain cases, "either the necessity of quick action by the State or the impracticality of providing any meaningful pre-deprivation process, when coupled with the availability of some meaningful means by which to access the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Id.* at 539.

In this case, Defendants argue that public safety required Cleo's seizure without waiting for a hearing. Defendants had reliable information that Cleo had inflicted life-threatening injuries on a neighbor's dog and was often running at large. The potential danger to the public and property posed by an aggressive dog running at large may require immediate action. *Phillips v. San Luis Obispo County*, 183 Cal. App. 3d 372, 379 (Cal. App. 1986) ("It is obvious that summary seizure of dogs must be permitted when of immediate danger to the public, as for example when the dog is vicious or rabid. In that situation, the governmental interest in protecting the personal and property rights of others

is paramount to the property right of the dog owner."). In fact, Folkers apparently concedes that Defendants had the right to initially seize Cleo, but argues that Cleo's continued detention pending the appeal denied him due process.

> Plaintiff does not contend that the City had no right whatsoever to initially seize his dog, he complains that the clear language of the city's ordinance required that the dog be returned to him while the appeal was pending.

Plaintiff's Brief in Resistance (docket number 57-2) at 3.

Folkers does not claim that Cleo's initial seizure on August 28, 2007 violated his constitutional rights, and it should be recalled that Cleo was returned to Folkers immediately following the hearing before the City Council on December 3, 2007. Instead, Folkers' principal complaint is the decision of the Waterloo City Council on September 24, 2007 to detain Cleo pending a final determination regarding whether he was a "dangerous dog" within the meaning of the City ordinance.[10] This claim, however, is not a *procedural* due process claim. That is, Folkers does not argue that he was denied a hearing, or that the hearing was untimely. Rather, he complains that the *decision* reached by the City Council following the hearing was arbitrary, unreasonable, and in violation of the city ordinance. The hearing was held "at a meaningful time and in a meaningful manner." The Court concludes that the post-deprivation hearing provided in this case satisfied Folkers' right to *procedural* due process.

### (2) Substantive Due Process

Next, Folkers argues that the City Council's decision to detain Cleo during the pendency of Folkers' appeal was "so irrational as to be arbitrary," thereby violating his

---

[10] Section 5-1B-1(B) of the Waterloo City Ordinances defines a "dangerous dog" as "any dog which attacks a human being or other domestic animal without provocation." By the time the matter came on for hearing on December 3, 2007, Folkers was no longer contesting the issue of whether Cleo is a "dangerous dog" as defined by the Ordinance.

right to substantive due process as guaranteed by the Fourteenth Amendment.[11] The only case cited by Folkers in support of his substantive due process claim, however, deals with *procedural* due process under the Fourteenth Amendment and an allegedly unreasonable seizure under the Fourth Amendment.[12] Defendants argue that they did not violate Folkers' right to substantive due process and, in any event, Folkers was required to challenge the allegedly arbitrary decision to detain Cleo under the "reasonableness" standard found in the Fourth Amendment.

In *Graham v. Connor*, 490 U.S. 386 (1989), a claim was brought against law enforcement officers, alleging the use of excessive force during an investigatory stop. The plaintiff brought an action pursuant to 42 U.S.C. § 1983, alleging defendants "used excessive force in making the investigatory stop, in violation of 'rights secured to him under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.'" *Id.* at 390. The lower federal courts applied a four-part substantive due process test identified in *Johnson v. Glick*, 481 F.2d 1928 (2d Cir. 1973). The Supreme Court remanded, finding that the claim should have been analyzed pursuant to the "unreasonable seizure" provision of the Fourth Amendment. In reaching that conclusion, the Court found that the "explicit" protections of the Fourth Amendment should be used, rather than the "generalized notion" of substantive due process found in the Fourteenth Amendment.

> Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Id.* at 395.

---

[11] "Plaintiff has not alleged an illegal seizure of his dog, he has alleged that by failing to follow it's [sic] own ordinances the defendants have denied him due process." Plaintiff's Brief in Resistance (docket number 57-2) at 3.

[12] *Audio Odyssey Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721 (8th Cir. 2001).

17

Similarly, in *Albright v. Oliver*, 510 U.S. 266 (1994), the Court held that "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged." *Id.* at 271. Petitioner alleged malicious prosecution, but limited his claim to one of substantive due process. *Id.* ("Petitioner's claim before this Court is a very limited one."). In concluding that the Section 1983 action should have been brought under the Fourth Amendment, the Court expressed doubts about the expansion of substantive due process claims.

> "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.

*Id.* at 271-272 (quoting *Collins v. Harker Heights*, 503 U.S. 115 (1992)).

Affirming the lower court's dismissal of the action, the Court concluded that petitioner's failure to seek a Fourth Amendment remedy was fatal to his claim.

> We express no view as to whether petitioner's claim would succeed under the Fourth Amendment, since he has not presented that question in his petition for certiorari. We do hold that substantive due process, with its "scarce and open-ended" "guideposts," can afford him no relief.

*Id.* at 275 (internal citation omitted).

In *Andrews v. City of West Branch*, 454 F.3d 914 (8th Cir. 2006), plaintiffs brought a Section 1983 action alleging a law enforcement officer "wrongfully seized and deprived them of their property" when he shot and killed their dog. *Id.* 916. They based their action on Fourth and Fourteenth Amendment claims, as well as alleged violations of state tort law. The district court entered summary judgment on defendants' behalf. On appeal, the Eighth Circuit Court of Appeals remanded on the Fourth Amendment claim of whether the shooting was "objectively reasonable," but summarily affirmed the dismissal of plaintiffs' substantive due process claim, finding it to be "without merit." *Id.* at 917.

Similarly, the plaintiff in *Dziekan v. Gaynor*, 376 F. Supp. 2d 267 (D.C. Conn. 2005), brought a Section 1983 action after his dog was shot and killed by a police officer. In granting summary judgment, the district court balanced the "intrusion on the plaintiff's Fourth Amendment rights against the countervailing governmental interest at stake." *Id.* at 270-271. The Court concluded that the shooting was objectively reasonable. The Court also found that the substantive due process provisions of the Fourteenth Amendment did not provide plaintiff with any additional relief.

> Plaintiff provides no argument that his allegations of the substantive due process violation are not already covered by the Fourth Amendment claim. Accordingly, the Court will grant the defendants' motion for summary judgment on the substantive due process claim. *See Andrews v. City of West Branch*, 2004 WL 2808385 n.1 (N.D. Iowa 2004) (where officer killed pet dog, substantive due process claim was not warranted since Fourth Amendment provided explicit protection against unreasonable seizure).

*Id.* at 270.

The Court concludes that Folkers' claim that Cleo was improperly detained while his appeal was pending implicates the protection against "unreasonable seizures" found in the Fourth Amendment. A Fourth Amendment "objective reasonableness" standard would require a balancing of the governmental interests in detaining Cleo against Folkers' possessory interest in his dog. *See, e.g., Graham*, 490 U.S. at 396; *Place*, 462 U.S. at 701. Whether Defendants complied with the city ordinances in deciding to detain Cleo would be a factor in determining if their decision was objectively reasonable. The Court is not required to make that determination, however, because Folkers has not claimed a Fourth Amendment violation.

Even if the Court determined that Folkers' claim was properly analyzed under the substantive due process provisions of the Fourteenth Amendment, rather than the unreasonable seizure provisions of the Fourth Amendment, it nonetheless concludes that Folkers is not entitled to relief. "[O]nly the most egregious official conduct can be said

to be 'arbitrary in the constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins*, 503 U.S. at 129). To meet the high standard required to establish a substantive due process claim, the wrongful conduct must "shock the conscience" and violate the "decencies of civilized conduct." *Id.* at 846 (citing *Rochin v. California*, 342 U.S. 165 (1952). The conduct must be "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency," or that it "interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (citing *Breithaupt v. Abram*, 352 U.S. 432 (1957), and *United States v. Salerno*, 481 U.S. 739 (1987)). In the instant action, the City Council had reliable information that Cleo had seriously injured a neighbor's dog and was sometimes allowed to run loose. Under these circumstances, the Court cannot say that the decision to detain Cleo "shocks the conscience," notwithstanding the City Council's apparent failure to comply with the provisions of the city ordinances.

### d. Summary

In summary, the Court concludes that since Folkers does not allege wrongdoing by any federal actor, the due process clause of the Fifth Amendment is inapplicable. The Court concludes that Folkers was afforded procedural due process, as required by the Fourteenth Amendment. The question of whether the decision to detain Cleo was unreasonable or arbitrary, implicates the "unreasonable seizure" provisions of the Fourth Amendment, rather than the substantive due process provisions of the Fourteenth Amendment. Even if the substantive due process provisions of the Fourteenth Amendment were otherwise applicable, however, the Court finds, as a matter of law, that Defendants' actions do not "shock the conscience." Since Folkers did not raise a Fourth Amendment claim, the Court is not required to determine whether the decision to detain Cleo, an apparent violation of the city ordinances, was "objectively unreasonable." Therefore, Plaintiff has not established liability against Defendants and his motion for partial summary judgment will be denied.

### B. Defendants' Motion for Summary Judgment

For all of the reasons that Plaintiff is not entitled to partial summary judgment on the issue of liability, the Court concludes that Defendants are entitled to summary judgment and dismissal of the Complaint. In his motion for partial summary judgment, Folkers concedes that "[i]f as a matter of law Folkers *did not* suffer a deprivation of his property without due process of law for the period of 100 days in which Defendants deprived Folkers of his property interest in his dog Cleo, Defendants are entitled to Summary Judgment dismissing Folkers' action against them." Motion for Partial Summary Judgment (docket number 48), ¶ 9 at 3. Accordingly, for the reasons set forth above, Defendants' motion for summary judgment will be granted.[13]

### VII. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Motion for Partial Summary Judgment (docket number 48) filed by the Plaintiff on June 2, 2008 is hereby **DENIED**.

2. The Motion for Summary Judgment (docket number 52) filed by the Defendants on August 12, 2008 is hereby **GRANTED**.

3. The Complaint (docket number 2) filed by the Plaintiff on September 25, 2007 is hereby **DISMISSED**.

DATED this 27th day of October, 2008.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA

---

[13] The City of Waterloo apparently intends to pursue a claim against Folkers in Small Claims Court for $1,030 allegedly due for boarding fees while Cleo was in the City's possession. The Court makes no judgment regarding whether the City is entitled to collect boarding fees under these circumstances, when Folkers was actively seeking the dog's return to him.